WESTERN UNION TELEGRAPH COMPANY V.
JULES DE JARLES.

No. 621.

1.  **Liability of Company—Night Message.**—A message known as a night message, and received after the messengers of the company had been discharged, if delivered in due time the next morning, does not authorize the submission to the jury of an issue as to whether or not there had been negligence on the part of the company in failing to deliver it sooner.

2.  **Place of Delivery.**—The messages were directed to the plaintiff, care of the Two Orphans saloon, but plaintiff had instructed defendant's agent in charge of its office in Houston, that if any message should come for him from New Orleans about his child to deliver it to him at No. 55 Caroline street, at once.   The message was not directed to the care of any one, and the mention of the saloon was evidently a direction by which the defendant could be found.   It would not have been sufficient diligence for defendant to have delivered the message at the saloon, when it knew where the plaintiff could be found by reasonable diligence.

3.  **Immediate Delivery—Rule as to.**—The defendant was required to use reasonable diligence to deliver the message with reasonable dispatch, and whether or not it had done so was the question for the jury to determine.   The fact that the agent had promised to deliver the message as soon as it came did not enlarge the duty imposed upon defendant by the law under the contract by which it undertook to transmit and deliver the message, nor authorize a charge that it was the duty of the defendant to deliver the message "at once."

4.  **Information to Agent—Admissible Evidence.**—It was admissible to prove the information given to the agent as to appellee's address, as affecting the question of diligence.

5.  **Charge Properly Refused.**—The following charge was properly refused, because it singled out a fact and called it to the attention of the jury in a way to impress them with the belief that in the opinion of the court it bore a particular direction, and was entitled to especial weight:  "In finding what damages, if any, have been sustained, they may, and indeed must, look to all the facts in evidence and the notice that he received, if any, that gave him the opportunity to see his child before it died."

6.  **Damages for Grief.**—If as a proximate result of delay in delivery of the message plaintiff was delayed in getting to New Orleans before changes resulting from decomposition had taken place in the body of his child, he could recover compensation for any grief that he experienced from that fact, and such damages would not be any more remote and uncertain than such as are usually recovered in such cases.

7.  **Stenographer's Report in Statement of Facts.**—The incorporation of all the testimony as taken down by the stenographer in the statement of facts is condemned, and the cost of making, filing, and copying it into the record adjudged against the appellant.

APPEAL from Harris.    Tried below before Hon. S. H. BRASHEAR.

*Lovejoy & Sampson* and *Perryman, Gillespie & Bullitt*, for appellant.

1.    The only diligence required of appellant was to deliver these telegrams at the Two Orphans saloon.    Tel. Co. v. Young, 13 S. W. Rep., 985.

2.    Damage for mental suffering sustained by plaintiff by not seeing his child until decomposition had set in, was too remote and speculative.    Ikard v. Tel. Co., 22 S. W. Rep., 534.

No brief for appellee reached the Reporter.

WILLIAMS, Associate Justice.—Appellee sued to recover damages from appellant because of its failure to exercise proper care in sending and delivering two telegrams, as follows:

"New Orleans, La., October 10, 1891.
"To Jake De Jarles, Two Orphans Saloon, Houston:
"Sister is very low.   Come if possible.   Answer.
                    [Signed]      "Lizzie Merriman."

"New Orleans, La., October 11, 1891.
"To Jules De Jarles, Two Orphans Saloon, Houston:
"Sister is dead.   Funeral Tuesday morning.
                    [Signed]      "Lizzie Merriman."

The person referred to as being sick and afterwards dead was the child of appellee.

The first message was conceded to have been what is known as a night message, and was received at Houston at night, after the hour when the messengers of defendant were discharged, and after which the company undertook to deliver no messages of this character. It was delivered in due time the next morning, and there was no evidence justifying the submission to the jury of the question whether or not there had been negligence in the failure of the defendant to deliver it sooner. The charge submitted that question, and authorized a verdict in case the jury should find there was negligent delay as to the first telegram. In this there was error. By a special charge the correct rule was given, and the jury were told that they would find no damages because of failure to deliver such telegram, if they found to exist certain facts which were uncontradicted. This was still submitting to the jury as an issue of fact a question which should have been entirely eliminated from the case, as a controverted point. The charge also required of defendant the "immediate" delivery of the message. This, as will be seen further on, was also error. It was shown, that about noon of the day of the receipt of the first message appellee sent to New Orleans a message asking for further information as to the condition of the child, and at the same time gave to appellant's operator his address, and requested the operator to deliver to him there any message that might come for him immediately upon its receipt; and that the operator promised him that this should be done.

Appellant requested the following special charge, which was refused:

"If you believe from the evidence that the two messages in question were directed to plaintiff in the care of the Two Orphans saloon, you are charged that the only diligence required of the defendant was to deliver same to the Two Orphans saloon; and you are further charged

to pay no attention to any directions given to defendant by plaintiff, when plaintiff and defendant were not on contractual relations as to the direction of delivering a message to plaintiff that might be sent to him from New Orleans."

And appellee requested this instruction, which was given:

"If you believe from the evidence that the plaintiff, Jules De Jarles, within reasonable time before the arrival at Houston of the dispatch in evidence from New Orleans notifying him of the death of. his child, notified the defendant company's agent in charge of its office at Houston, that if any message should come for him from New Orleans respecting his said child to deliver to him at No. 55 Caroline street at once upon such receipt thereof by the company, and its agent in charge of its office so agreed to do; and if you believe further that such telegraphic message was shortly thereafter received by defendant company at Houston giving information of the death of said child, and that defendant company did not so deliver or attempt to deliver said message to plaintiff as agreed, but negligently delayed such delivery or attempt to deliver, and if such negligence of the defendant company (if you find it was negligent) was the proximate cause why plaintiff did not reach New Orleans until his dead child had become decomposed or mortified, and as a result thereof plaintiff suffered grief and disappointment, then find for plaintiff in such sum as you may deem just and compensatory therefor under all the circumstances and the law given."

The refusal to give the first and the giving of the second instruction are assigned as errors.

The first instruction was properly refused, for several reasons. There was no delivery of the second telegram at the Two Orphans saloon, and as to it the charge was inapplicable to the evidence. Concerning the first, there was, as we have seen, no issue that ought to have been submitted. Again, it would not have been sufficient diligence for defendant to have delivered the dispatch at the saloon when it knew where appellee could be found, by reasonable diligence. The message was not directed in the care of any person, and the mention of the saloon was evidently a direction by which appellant could be found. If he was not there, it was the duty of appellant to exercise reasonable care to find him elsewhere. The decision in the case of Telegraph Company v. Young, 13 Southwestern Reporter, 985, is not in point.

But in our opinion the special charge given was erroneous, in that it impressed upon the jury the proposition that it was the duty of the defendant to deliver the second telegram "at once," because the agent had promised to do so. This did not express the proper measure of defendant's duty. It was required to use reasonable diligence to deliver the message with reasonable dispatch, and whether or not it had done so was a question for the jury to determine under all the evidence. The fact that the agent had promised to deliver the message as soon as it came did not, we think, enlarge the duty imposed

upon defendant by law under the contract by which it undertook the transmission and delivery of the message. That contract with its resulting obligations began when the telegram was delivered to defendant at New Orleans, and was not affected by the promise of the agent made at Houston before it had been received by defendant. It was admissible, however, to prove the information given to the agent as to appellee's address, as affecting the question of diligence. Its effect for that purpose was for the jury to determine. It seems to be assumed that the second message was one to which appellant's regulations as to the delivery of night messages did not apply, though it was received in the night; and we treat the question upon that hypothesis. The statement of facts leaves this somewhat indefinite. The statement seems to consist of the stenographer's notes, taken at the trial, and often represents the witnesses as testifying about telegrams which were before them and before the court below, but which are not before us. To which message some of the testimony relates, it is often difficult to ascertain.

The court refused the following charge requested by appellant:

"That in finding what damages, if any, have been sustained by the plaintiff because of anguish of mind he has sustained, they may, and indeed must, look to all the facts in evidence, and the notice that he received, if any, that gave him opportunity to see his child before it died."

This charge was properly refused, because it singled out a fact and called it to the attention of the jury in a way to impress them with the belief that in the opinion of the court it bore in a particular direction and was entitled to especial weight.

. It is unnecessary to review in detail the other assignments. On one of the other questions presented, it is proper to express an opinion. If the defendant was in default in delaying the delivery of the second telegram, and plaintiff, as a proximate result of its negligence, was delayed in getting to New Orleans, any grief or disappointment that naturally and proximately resulted from such delay is recoverable. If he could and would have reached that city in time to have seen the body of his child before changes resulting from decomposition had taken place, and was prevented by the default of defendant from doing so, we are of the opinion that, under the rules established in this State, he could recover compensation for any grief that in the opinion of the jury he naturally experienced from that fact. Such damages would not be any more remote or uncertain than such as are usually recovered in such cases.

The incorporation in the statement of facts of all the testimony as given in the trial and taken down by the stenographer has often been condemned, and has in this case, as above pointed out, caused difficulty in its consideration. The cost of making and filing the statement and of copying it in the record are adjudged against appellant.

*Reversed and remanded.*

Delivered September 20, 1894.